Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| WILLIAM JOSÉ NAZARIO CORREA<br>*Apelante*<br><br>KASANDRA ECHEVARRÍA SANTIAGO<br>*Apelada*<br><br><br>EX PARTE | KLCE202400230 | *Certiorari* acogido como Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.:<br>J DI2018-0557<br>Sala (405)<br><br>Sobre:<br>Divorcio-Consentimiento Mutuo |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de julio de 2024.

Comparece el señor William Nazario Correa (señor Nazario Correa o apelante) mediante recurso de *Certiorari*, el cual acogemos como *Apelación*[1], y nos solicita la revisión de la *Resolución* emitida el 22 de diciembre de 2023, notificada el 16 de enero de 2024, por el Tribunal de Primera Instancia, Sala Superior de Ponce. En virtud del referido dictamen, el foro primario acogió el *Acta-Informe* emitido por la Examinadora de Pensiones Alimentarias (EPA) y declaró Ha Lugar la solicitud de aumento de pensión alimentaria presentada por la señora Kasandra Echevarría Santiago (señora Echevarría Santiago o apelada).

El 30 de enero de 2024, el señor Nazario Correa presentó *Moción en solicitud de reconsideración*, la cual fue declarada No Ha

---

[1] Las determinaciones sobre pensiones alimentarias, incluyendo aquellas en las que se modifican o intentan modificar dictámenes finales previos, constituyen propiamente sentencias de las cuales se puede interponer un recurso de apelación. *Otero Vélez v. Schroder Muñoz*, 200 DPR 76, 86 (2018); *Cortés Pagán v. González Colón,* 184 DPR 807, 815 (2012); *Figueroa v. Del Rosario,* 147 DPR 121, 129 (1998).

Número Identificador
SEN2024_____

Lugar mediante *Resolución* emitida el 6 de febrero de 2024 y notificada 9 de febrero de 2024.

Por los fundamentos que exponemos a continuación, **modificamos** la determinación impugnada y, así modificada, **confirmamos**.

### I.

El 24 de febrero de 2022, la señora Echevarría Santiago presentó una *Petición Aumento de Pensión*[2]. Por medio de esta, solicitó la revisión de la pensión alimentaria establecida en el 2018 en beneficio de uno de los hijos, menor de edad, procreados por ésta y el señor Nazario Correa. Requirió, además, que se hiciera un referido ante la Oficina de Relaciones de Familia para establecer las relaciones paternofiliales y dejar sin efecto la custodia compartida.

Luego, el 29 de abril de 2022, la apelada sometió la *Planilla de Información Personal y Económica* (PIPE)[3], en la que precisó bajo juramento sus circunstancias económicas y los gastos del referido menor de edad.

Tras múltiples incidencias procesales, y conforme surge del recurso ante nos, el 28 de febrero de 2023, la apelada sometió una *Moción para Incluir e Informar Gastos y Necesidades del Menor*[4].

Eventualmente, el 14 de junio de 2023, el señor Nazario Correa compareció mediante *Moción Informativa*[5], en la que expuso haber aceptado capacidad económica para cubrir las necesidades de su hijo menor de edad.

El 11 de julio de 2023, el señor Nazario Correa presentó *Moción Informativa Urgente*[6], en la que objetó varios de los gastos notificados por la apelada, por estos ser alegadamente duplicados,

---

[2] Apéndice del recurso, Anejo IV.
[3] Apéndice del recurso, Anejo IX.
[4] Apéndice del recurso, Anejo VI. Cabe mencionar que dicha moción no consta en los autos originales del caso.
[5] Apéndice del *Alegato en Oposición a Certiorari*, Anejo 2.
[6] Apéndice del recurso, Anejo VII.

inexistentes -puesto que él había pagado la totalidad- e improcedentes. En detalle, el apelante impugnó los siguientes gastos: pintura de la casa, internet, celular, compra para el hogar, gastos de transportación, pago del vehículo y lavado mensual del mismo, tratamiento de ortodoncia, perfumes, compra de sábanas, limpieza de aires acondicionados, joyería fina y accesorios, ropa, tenis y chancletas.

Según surge del expediente apelativo, la apelada instó otra *Moción para incluir e informar gastos y necesidades del menor*[7]. En esta, expresó que el señor Nazario Correa había aceptado capacidad económica e incluyó un listado de los gastos y las necesidades del menor de edad, resultando en una nueva relación de gastos.

El 19 de octubre de 2023, las partes de epígrafe presentaron una *Moción informativa e informe conjunto de reunión entre abogados*[8]. Por virtud de esta, se estipularon las siguientes partidas:

a. …
b. …
c. Partidas de gastos mensuales que no están en controversia y que el alimentante pagará directamente:
   1) Aportación del menor de la hipoteca $120.00
   2) Pintura de la residencia $11.66.
   3) Plan Médico del menor $105.00 (pap[á] ya lo paga directamente)[.]
   5) Agua $6.66 (pap[á] ya lo paga). Se pagan $20.00 por parte del padre.
   6) Compra de Alimentos en el hogar $250.00[.]
   7) Barbería papá lo pagará directamente.
   8) Internet $17.99[.]
   9) Celular el padre lo paga directamente.
   10) Fumigación $5.55[.]

Además, las partes de epígrafe desglosaron los gastos del menor de edad sobre los cuales existía controversia tanto de la necesidad del gasto como de la cuantía reclamada, así como aquellos en los que la controversia surgía únicamente en la cuantía de este.

Así las cosas, los días 8 y 22 de noviembre de 2023, se celebró una vista ante la EPA para atender la solicitud de revisión de

---

[7] Apéndice del *Alegato en Oposición a Certiorari*, Anejo 3. Dicha moción tampoco consta en los autos originales.
[8] Apéndice del recurso, Anejo VIII.

pensión alimentaria de la señora Echevarría Santiago. Conforme surge del *Acta-Informe*, la EPA utilizó el documento sometido conjuntamente por las partes de epígrafe y las declaraciones de estos en la vista para determinar los gastos razonables del menor de edad. Así pues, la EPA estimó las necesidades y gastos razonables en $2,424.53 mensuales. De dicha cantidad, recomendó que el señor Nazario Correa retuviese la suma de $1,132.31 –para cubrir el gasto de hipoteca, el plan médico y aquellas partidas que ofreció pagar directamente– y que se le entregara a la señora Echevarría Santiago el monto restante, a saber: $1,292.22.

Asimismo, la EPA recomendó que: (1) se ordenara al apelante a mantener al menor de edad como beneficiario del plan médico; (2) se le impusiera al señor Nazario Correa el pago del 100% de los gastos de graduación del alimentista, previa presentación de recibo o factura; (3) las representantes legales de las partes de epígrafe se reunieran para determinar la cantidad de deuda y los créditos que mantenía el apelante, e informaran al tribunal una propuesta de plan de pago y, (4) la imposición de $800.00 al señor Nazario Correa en concepto de honorarios de abogados.

El 22 de diciembre de 2023, el foro primario emitió *Resolución*[9], en la que declaró Ha Lugar la solicitud de aumento de pensión alimentaria y acogió todas las recomendaciones de la EPA, haciéndolas formar parte de su dictamen.

Inconforme, el 30 de enero de 2024, el señor Nazario Correa presentó *Moción en solicitud de reconsideración*[10]. De entrada, expuso que la suma de los gastos mensuales que debía entregar a la señora Echevarría Santiago totalizaba $1,053.87 y no $1,292.22 según consignado por la EPA. Por otro lado, insistió en que varias de las partidas consideradas para establecer la pensión alimentaria

---

[9] Apéndice del recurso, Anejo I.
[10] Apéndice del recurso, Anejo II.

del menor de edad no procedían o eran excesivas. Particularmente, solicitó la reconsideración de las siguientes partidas: (1) medicamentos *over the counter*; (2) decoración navideña; (3) gasto escolar diario; (4) gastos de cumpleaños del menor; (4) gastos de actividades a las cuales el menor de edad es invitado; y, (5) gastos de mascotas.

Sobre los medicamentos **over the counter**, sostuvo que se le estaba obligando a pagar una cantidad mensual para ello, aun cuando no se comprara ninguno. Añadió que ya había asumido los gastos de higiene personal de su hijo, los cuales incluía unas cremas faciales para una condición del menor, por lo que suponía una duplicidad de gastos. En cuanto a la **decoración navideña**, argumentó que ello no constituía parte de los alimentos del menor. Adujo que dicha partida no era necesaria ni razonable, y que no debía siquiera considerarse al momento de adjudicar el pago de la pensión alimentaria.

Con respecto al **gasto escolar diario**, esgrimió que el mismo se duplicaba al ya incluirse un gasto por concepto de comida fuera del hogar. Sostuvo, además, que dicho gasto escolar se extinguiría en el mes de mayo del 2024, puesto que el menor se graduaría de su cuarto año. Indicó que el mismo debió haberse dividido por etapas. Por otro lado, con relación a **los gastos de cumpleaños**, manifestó que ello no era una necesidad del menor y que la cantidad era arbitraria. Agregó que la celebración de la vida del menor era prerrogativa individual de los progenitores, así como los gastos en los que cada uno incurriera.

En lo que respecta a la partida por **gastos de actividades** a las cuales el menor es invitado, adujo que la misma no era razonable. Puntualizó que la pensión alimentaria del menor debía basarse en sus necesidades y no en las de terceras personas. Finalmente, acerca del **gasto de mascotas**, indicó que el mismo no

era acorde con los ingresos limitados de la madre, es decir, que no se sustentaba.

El señor Nazario Correa, también arguyó, que la cantidad que la apelada solicitaba en concepto de retroactivo, a saber, más de $50,000.00, sobrepasaba el ingreso recibido por ella en veintiún meses, por lo que no era creíble que hubiese incurrido en tales gastos. Por último, expresó que, si bien la ley dispone que el subsidio de alimentos del PAN no debe considerarse como un ingreso de la apelada, no debía reconocerse un gasto de alimentos retroactivamente, puesto que la señora Echevarría Santiago no había generado el mismo. Asimismo, manifestó que, reconocer dicho gasto, implicaría un enriquecimiento injusto por parte de esta.

El 6 de febrero de 2024, el TPI emitió una *Resolución*[11], en la que, entre otras cosas, declaró No Ha Lugar la reconsideración presentada.

Insatisfecho aún, el 23 de febrero de 2024, el señor Nazario Correa acude ante nos mediante el presente recurso y señala al foro primario la comisión del siguiente error:

> ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA SOLICITUD DE RECONSIDERACIÓN DEL RECURRENTE Y VALIDANDO LAS PARTIDAS Y CUANTÍAS PARA IMPONER LA PENSIÓN ALIMENTARIA, LAS CUALES SON IRRAZONABLES Y NO FUERON INCLUÍDAS EN LA PLANILLA DE INFORMACIÓN PERSONAL Y ECONÓMICA RADICADA.

El 28 de febrero de 2024, emitimos una *Resolución* interlocutoria en la que concedimos a la señora Echevarría Santiago hasta el 27 de marzo de 2024 para presentar su alegato. Luego de una solicitud de prórroga autorizada, el 15 de abril de 2024, la apelada compareció mediante *Alegato en Oposición a Certiorari*.

El 6 de mayo de 2024, emitimos otra *Resolución*, en la que ordenamos a la Secretaria del TPI remitir en calidad de préstamo los autos originales del caso.

---

[11] Apéndice del recurso, Anejo III.

Con el beneficio de la comparecencia de las partes y examinados los autos originales, procedemos a disponer del recurso ante nuestra consideración.

**II.**

**-A-**

Reconocemos que los Tribunales de Primera Instancia tienen una gran discreción en el manejo de los procedimientos celebrados en sus salas. En su misión de hacer justicia, la discreción es el más poderoso instrumento reservado a los jueces[12]. En el ámbito del desempeño judicial, la discreción no significa poder para actuar en una forma u otra, haciendo abstracción del resto del derecho; ciertamente, esto constituiría un abuso de discreción. La discreción es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera[13]. Tal conclusión justiciera deberá estar avalada por el convencimiento del juzgador de que la decisión tomada se sostiene en el estado de derecho aplicable a la cuestión planteada. Ese ejercicio constituye "la razonabilidad" de la sana discreción judicial[14].

En el contexto de esa doctrina, debemos tener presente el alcance de nuestro rol como foro apelativo al intervenir precisamente con la discreción judicial. Es norma reiterada que este foro no habrá de intervenir con el ejercicio de la discreción del Tribunal de Instancia, salvo en caso de "un craso abuso de discreción o que el tribunal actuó con prejuicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial"[15].

---

[12] *Banco Metropolitano v. Berríos*, 110 DPR 721, 725 (1981).
[13] *Bco. Popular de P.R. v. Mun. de Aguadilla*, 144 DPR 651, 657-658 (1997).
[14] *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).
[15] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

**-B-**

Nuestro Tribunal Supremo se ha expresado diáfanamente sobre el derecho a recibir alimentos[16]. Estos son definidos como todo aquello que sea indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de la familia[17]. En instancias en las que el alimentista sea menor de edad, los alimentos también comprenden la educación, las atenciones de previsión, de acuerdo con los usos y las circunstancias de su entorno familiar, y los gastos extraordinarios para la atención de condiciones personales especiales[18].

En aras de lograr un proceso justo y rápido que garantice el pago de las pensiones alimentarias, se promulgó la Ley Núm. 5 del 30 de diciembre de 1986, conocida como la *Ley Orgánica de la Administración para el Sustento de Menores*, según enmendada (Ley de Sustento de Menores)[19]. En virtud del referido estatuto, se establecieron las *Guías Mandatorias para Determinar y Modificar Pensiones Alimentarias en Puerto Rico*, Reglamento Núm. 8529 del 30 de octubre de 2014. Ello, con la finalidad de determinar las pensiones alimentarias a base de "criterios numéricos y descriptivos" que faciliten el cómputo de la cuantía de la obligación alimentaria[20].

La determinación relativa a la cuantía de los alimentos que los padres o madres deben proveer a sus hijos o hijas debe ser proporcional a las necesidades de aquél que los recibe y a los recursos de quien los da, reduciéndose o aumentándose, la misma,

---

[16] *Mc Connell v. Palau*, 161 DPR 734, 746 (2004).
[17] 31 LPRA sec. 7531.
[18] 31 LPRA sec. 7531.
[19] 8 LPRA, sec. 501, *et. seq.*
[20] Art. 3, Reglamento Núm. 8529.

conforme a tales criterios[21]. Cuando se evalúa una pensión alimentaria, debe indagarse sobre la capacidad económica de la persona no custodia, así como de aquella que ostenta la custodia, toda vez que ambas están obligadas a prestar alimentos de forma proporcional a sus recursos[22].

**-C-**

El Artículo 16 de la Ley de Sustento de Menores obliga al descubrimiento de prueba sobre la situación económica de un alimentante con el fin de fijar adecuadamente el monto de la pensión alimentaria[23]. En tal sentido, la Ley de Sustento de Menores provee para la utilización de la Planilla de Información Personal y Económica (PIPE). En detalle, el Artículo 16 del referido cuerpo normativo dispone como sigue:

> La Oficina de Administración de los Tribunales preparará un formulario para servir de guía respecto de la información mínima requerida sobre la situación económica de las partes, las necesidades del alimentista y la capacidad de pago del alimentante. El formulario completado y juramentado, u otro documento similar, también juramentado, que contenga toda la información requerida deberá radicarse en la secretaría del tribunal y notificarse a la otra parte con antelación a la vista y sujetará al declarante a las penalidades dispuestas para el delito de perjurio[24].

No obstante lo anterior, cuando el padre o madre alimentante acepta tener capacidad económica, dicho descubrimiento se hace innecesario[25]. En los casos en que un alimentante acepta capacidad económica, procede que éste pague el cien por ciento (100%) de las necesidades razonables del alimentista[26]. En cuanto a esto, el Tribunal Supremo ha advertido que, si un alimentante acepta tener capacidad económica, luego no podrá impugnar la pensión fijada

---

[21] 31 LPRA sec. 7561; 31 LPRA sec. 7567. Véase, además, *Pesquera Fuentes v. Colón Molina*, 202 DPR 93, 108 (2019); *Medina Llorens Becerra v. Mora Monteserín*, 178 DPR 1003, 1016 (2010).
[22] *Franco Resto v. Rivera Aponte*, 187 DPR 137, 150 (2012).
[23] 8 LPRA sec. 515.
[24] *Íd.*
[25] *Díaz Rodríguez v. García Neris*, 208 DPR 706, 719 (2022); *Pesquera Fuentes v. Colón Molina, supra*, pág. 110, citando a *Chévere v. Levis*, 150 DPR 525, 544 (2000).
[26] *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 571 (2012).

conforme a las necesidades razonables del menor alegando no poder pagarla[27]. **Empero, esta prohibición no impide que un alimentante impugne la cuantía de la pensión alimentaria por resultar contraria a la prueba desfilada o irrazonable en cuanto a las necesidades del alimentista**[28].

Las necesidades razonables del alimentista a las que viene obligado a pagar el alimentante que acepta tener capacidad económica son las que se hayan probado por la persona custodia durante una vista evidenciaria[29]. La persona custodia puede presentar prueba circunstancial o directa para demostrar el estilo de vida de un alimentante a los efectos de que la pensión alimentaria corresponda a las necesidades del alimentista de acuerdo con dicho estilo de vida que los menores tienen derecho a disfrutar[30]. Por el contrario, si el alimentante prefiere pagar solamente una proporción de las necesidades razonables del alimentista para que la persona custodia también realice una aportación justa y matemática a las mismas, deberá divulgar sus ingresos para que puedan usarse las Guías y así adjudicarse la participación correspondiente a cada progenitor[31].

**III.**

En su recurso, el señor Nazario Correa señala que incidió el foro primario al declarar No Ha Lugar su solicitud de reconsideración y validar las cuantías para imponer la pensión alimentaria, por entender que son irrazonables y no fueron incluidas en la PIPE radicada por la señora Echevarría Santiago.

Por su parte, la señora Echevarría Santiago aduce que el señor Nazario Correa aceptó capacidad económica, por lo que le

---

[27] *Chévere v. Levis,* 150 DPR 525, 546 (2000).
[28] *Pesquera Fuentes v. Colón Molina, supra,* pág. 111; *Santiago, Maisonet v. Maisonet Correa, supra,* pág. 565.
[29] *Santiago, Maisonet v. Maisonet Correa, supra,* pág. 572.
[30] *Íd.,* pág. 570.
[31] *Íd.,* pág. 571.

corresponde pagar el 100% de los gastos y necesidades de su hijo menor de edad. Además, sostiene que en las vistas celebradas ante la EPA presentó evidencia de los gastos razonables del menor de edad, a la cual la EPA le adjudicó credibilidad.

Como mencionamos anteriormente, en los casos en que el alimentante acepta tener capacidad económica para satisfacer los gastos de sus hijos, solo resta determinar las necesidades económicas del alimentista, sin que pueda posteriormente el alimentante impugnar la pensión alimentaria que se fije. No obstante, esto no impide que un alimentante pueda impugnar la cuantía de la pensión alimentaria por resultar contraria a la prueba desfilada o irrazonable en cuanto a las necesidades del alimentista[32]. Las necesidades razonables de los menores son aquellas que la parte alimentista logró probar durante la vista evidenciaria[33].

Según reseñamos, el señor Nazario Correa, padre alimentante, aceptó tener capacidad económica para pagar una pensión alimentaria adecuada y razonable para su hijo menor de edad. Luego, las partes de epígrafe presentaron una *Moción informativa e informe conjunto de reunión entre abogados*[34] en la que estipularon algunos gastos y partidas mensuales por concepto de pensión alimentaria, pero otras fueron impugnadas por el apelante.

Posteriormente, el foro primario acogió el *Acta-Informe* emitido por la EPA y declaró Ha Lugar la solicitud de aumento de pensión alimentaria presentada por la señora Echevarría Santiago. No obstante, encontramos que dicho informe incluye partidas que fueron objetadas por el apelante, no fueron incluidas en la *Moción*

---

[32] *Pesquera Fuentes v. Colón Molina, supra,* pág. 111; *Santiago, Maisonet v. Maisonet Correa, supra,* pág. 565.
[33] *Santiago, Maisonet v. Maisonet Correa, supra,* pág. 572.
[34] Apéndice del recurso, Anejo VIII.

*informativa e informe conjunto de reunión entre abogados* o no surge evidencia de gastos en los autos del caso.

Específicamente, el apelante impugnó las siguientes partidas: medicamentos *over the counter,* gasto de decoración navideña, gasto escolar diario, gastos de cumpleaños para celebrar la vida del menor, gastos de actividades a las cuales el menor es invitado y el gasto de mascotas.

Tras un examen minucioso de los autos originales, así como de los argumentos presentados por las partes, concluimos modificar el dictamen impugnado a los fines de eliminar aquellas cuantías o gastos que identificamos irrazonables. Esta modificación surge como corolario de la carencia de prueba que sustente los gastos razonables del menor de edad.

Específicamente, eliminamos de la pensión alimentaria[35] las partidas y cuantías de: medicamentos **over the counter** por la cantidad mensual de **$85.33**; **gasto escolar diario** por la cantidad mensual de **$33.33**; **gastos de cumpleaños** para celebrar la vida del menor por la cantidad mensual de **$15.33**; **gastos de actividades a las cuales el menor de edad es invitado** por la cantidad mensual de **$12.50** y, se modifica a los fines de establecer que el apelante pagará todos estos gastos cuando se entreguen los correspondientes recibos. También, eliminamos los gastos por concepto de **decoración navideña** por la cantidad mensual de **$116.66**, por no constituir una necesidad personal del menor, ni existir prueba que demuestre que es parte de su estilo de vida; y el **gasto de mascotas** por la cantidad mensual de **$103.00**, debido a que, según se desprende de la *Moción informativa e informe conjunto de reunión entre abogados*, las mascotas no residen en la casa del menor. Destacamos que, tampoco surge del expediente ante nos que

---

[35] Apéndice del recurso, Anejo I Resolución y Acta-Informe.

los gastos antes mencionados se hayan probado ante la EPA. Al considerar la insuficiencia de la prueba de estos gastos, procede la modificación de la *Resolución* impugnada.

**IV.**

Por los fundamentos antes expuestos, **modificamos** la determinación impugnada a los fines de eliminar las siguientes cuantías del pago mensual de pensión alimentaria: $85.33 por concepto de los medicamentos *over the counter;* $33.33 de gasto escolar diario; $15.33 de gastos de cumpleaños; 12.50 de gastos de actividades a las cuales el menor de edad es invitado; $116.66 por concepto de decoración navideña; y $103.00 por concepto de mascotas, al constituir estos gastos irrazonables. En consecuencia, ordenamos la eliminación de **$366.15**[36] de la cantidad del pago mensual de pensión alimentaria que realiza el señor Nazario Correa, por ser la suma total de los gastos irrazonables; y, así modificada, **confirmamos**.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. La juez Barresi Ramos concurre con el resultado sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[36] Reiteramos que el apelante pagará todos los gastos por medicamentos *over the counter*, gasto escolar diario, gastos de cumpleaños del menor y gastos de actividades a las cuales el menor de edad es invitado cuando se entregue el recibo de dichos gastos. La señora Echevarría Santiago tendrá diez (10) días para presentarle la evidencia al señor Nazario Correa; y éste, a su vez, tendrá diez (10) días para realizar el pago.